Okay. Good morning, Your Honors. May it please the Court. This is my first oral argument. I'm a little bit nervous despite the number of briefs I filed, Judges, and if I cough, I apologize to Your Honors. I'm on blood thinner medication and sometimes I get the dry cough as a side effect, but I will proceed nonetheless. Our argument, Your Honor, we have three main points this morning. Again, my name is Omar Rosales. I represent my disabled client, John Deutsch, in our case versus Travis County Shoe Hospital. Our three main points are that point number one, frame B Arlington, which is frame two, is still good case law referencing ADA standing. Point number two was that the fine of $2,500 was improper and excessive, and point number three was that the defendant is Travis County Shoe Hospital, is not due any type of costs or fees. Regarding point one, it is our argument that frame B Arlington, frame two, which is 657F3215, the Fifth Circuit decision from 2011, served denied, is still good case law to convey ADA standing. As the Court is aware, the ADA is a very important piece of civil rights legislation. It allows us as disabled people to access businesses and facilities. It also gives individuals who are disabled the right to sue to obtain their rights. It allows the attorneys and the plaintiffs to work as private attorney generals to enforce this federal law. Counsel, that's the phrase I was expecting, and it seems to be completely applicable to a lot of legislation, but the case law is, it seems to me, cannot be ignored that that your client needs standing. So you're not just, effectively, of some federal or state agency going out and finding those who are violating the ADA, and I accept, on this record, could well be that all those that you identified had in some way been violating. But you need standing, more than the federal court, a federal agency would. So what's wrong with the district judge ruling on standing? Correct, Your Honor. And again, we quoted to the magistrate the actual ruling in frame, which is frame two, and the Fifth Circuit decision is that once the disabled person is standing, it's sufficient for standing. In the Fifth Circuit, that last part, that goes to footnote 104, the sentence that introduces 104, it says, similarly, a disabled individual need not engage in futile gestures before seeking an injunction. What does the record show? Your Honor, the record shows What does it encounter with the barrier? Yes, Your Honor. The record shows my client went to the business on August 28th, 2015. He could not enter the business. The business did not have a disabled parking sign, it did not have the disabled parking space, and it did not have the access aisle. We proved that in our pleadings with satellite imagery and non-scene photographs. So our argument to the district court was that by frame and by footnote 104, my client has standing to proceed with a lawsuit to obtain his rights under the ADA. Assuming, Arguendo, that you're correct and that your client had standing, why isn't the case moot because they fixed it? Your Honor, the ADA actually gives us the ability to obtain an injunction to make sure that the defendant actually complies with the law. With this specific case, what you're really looking for is an injunction to make sure they never stop complying with the law, it seems to me, because the evidence, I mean, if there's contrary evidence, that would be different, but the evidence is they are complying, and I don't think there is case law that supports that you can get an injunction to admit somebody in compliance just to keep them from going out of compliance, and that seems to me what you're talking about. That's actually incorrect, Your Honor, because the evidence that we provided shows that the defendant did not comply. Despite being sued, despite being at the Fifth Circuit, the defendant has not fully complied. There still is not the sufficient access aisle. One of the arguments I remember you making is that there's no sign, the sign doesn't say ban accessible. No, Your Honor. The sign does say ban accessible. It has the 96-inch space, but it does not have the 96-inch access aisle. Is there evidence of that? Yes, Your Honor. Is there just a picture, or do you have some evidence from somebody who went out and measured this that somehow disputes the contrary evidence? Your Honor, we introduced the evidence through pictures and also referenced Google Earth, Google Street View. The clerks can go right now to look at Google Street View and see the actual property. I get to put evidence in the record at this point, so. Yes, Your Honor. Is it in the record before the magistrate judge? Yes, Your Honor. We showed, I filed the... That it was not, that the modification was not satisfactory? Exactly, that's correct. Where is that in the record? That would be in our, I believe it was in the response portion to the motion to, motion to dismiss, where we argued that, and we argued that the property was not fully compliant. We included a new set of photographs to show that the access aisle was not 96 inches wide. Did you complain about that over here? Yes, Your Honor, we did. I thought you complained about striping the parking lot and installing less than half an inch thresholds at the entrance. Your Honor, the complaint had the lack of the van accessible space, the striping and the threshold. When I say a van accessible space, the CFR refers to the design, the 96-inch space, and a 96-inch access aisle. So the CFR already pulls in all those three aspects, and that's actually in the pleading. In the first original complaint, I actually included that CFR, which defines exactly what the van accessible... But did it say specifically that that was an error still with this property? Yes, Your Honor. And that that was at all times being challenged? Yes, Your Honor, we did. We did. And then the magistrate instead, he focused on the intent to return to us, not the Framby-Arlington standard. And that's what I wanted to focus in. Counsel, we are looking at evidence, not speculation, and I don't want to leave the pictures yet. First, I want to make sure I know what the state of the record is. What supports your position, you are arguing, are pictures. Yes, Your Honor. Pictures that are not in any way supported by an affidavit or otherwise, that someone has measured what you say is not the appropriate dimensions. So you'd have to tell from the pictures and whatever kind of work you would do from those pictures to figure out how wide the space is. That sounds as if it's, let me just say, weak evidence. Your Honor, it's fairly obvious. I'm the photographer also. I try to get a good picture. You can tell, I mean, the size of the access aisle and the space. You can clearly see the space is 96 inches from the picture, and the access aisle is much smaller, so it doesn't comply with the van accessible space in that regard, Your Honor. And the purpose of the van accessible, that access aisle, is so that somebody can take out their wheelchair in a safe fashion. They're not going to be run over. They're not going to be encumbered by another vehicle at park next door. Do you agree that the parking lot was re-striped in order to add the required number of accessible spaces before the final judgment? Before the final judgment? Yes, but with a caveat, Your Honor. The caveat is that it was not done correctly, and that's why we wanted to get the injunction, because that access aisle was not 96 inches wide. And that is part of the CFR. That is what is required. It's not clear to me that you specifically complained about that. You cite the CSR, but it's not clear to me that you say that this relates to your first complaint, that this re-striping is not satisfactory under the rules. I don't really see that that's being brought out. I just see you citing the rule and then saying, see the pictures. And so how does the court know that you're saying that because the pictures do show that the striping is there. So how does the court know that you're complaining that the first complaint you had to the district court is still not satisfied? That was the purpose of us seeking the injunction, Your Honor. But it's also in the response to the motion to dismiss. We specified to the magistrate that the striping was not done correctly because it doesn't have that access aisle. Did you raise this to the district court? I'm sorry, Your Honor? Didn't the district court, before it rendered final judgment? The district court just signed off on the report and the recommendation from the magistrate. Did you object to the recommendation and say this is specifically why you have this as a specific objection? Those are the specific objections, Your Honor. And again, our argument was that at the motion to dismiss phase, we're not supposed to be conducting evidentiary hearings. We're not supposed to be introducing affidavits. We're supposed to be looking at the case on the basis of the pleadings. Well, not on mootness. It seems to me if the issue of mootness is raised, there's no case of controversy. That has to be dealt with. There's no jurisdiction. With the exception of the injunction, because the statute, Your Honor, allows us to obtain the injunction. You don't get an injunction if it's moot under our law. So assume that you don't get that. So the question is, is it really moot? And was it complained about? It was not moot, Your Honor, because it wasn't fixed properly. And we argue that to the magistrate again and again. Do you have anything else? Yes, Your Honor. Again, Frame v. Arlington is still a good case. All that footnote 104, once the disabled person encounters the barrier, that is sufficient to convey standing. Some circuits have adopted... Are you talking about Frame? Is that what you said? Yes, Frame v. Arlington. I mean, there are the sidewalks throughout Arlington. Is that where it was? Yes, that was the original case. Yes, Your Honor. I mean, there the plaintiff actually had encountered the sidewalks. In his wheelchair, the sidewalk. And it seems to me how we put it... I mean, you have to put yourself in Frame's situation. Your client does. And he needs to encounter all of these things in some way that's not... He was there one day and he'll never be back. And that wasn't the record on Frame. But it does seem to be potentially the record on your client. And that's what we have to work with. Well, Your Honor, the frame actually, footnote 104, explains that. It doesn't require the client to complete an impossible task. It doesn't require that person to get into that building that's not accessible. Well, here's an impossible task. I mean, if your client wants his shoes again repaired, what we have is evidence of an arguably compliant parking lot, a lowered threshold. If it's not fully in compliance, they think in order for that issue to continue, we need some evidence that your client has any prospect of encountering this again. Again, mootness being a prior issue to that if we get past mootness. Your Honor, not all the circuits have adopted the intent-to-return test. It's not been adopted by the Supreme Court. It's not a part of the statute. The intent-to-return test has its limitations. You cannot jump into somebody's mind to figure out their intent. It's a factor of standing. It's not a factor of anything else. Is this person got a complaint? No, I agree, Your Honor, but in terms of the intent-to-return test, that's not a part of the ADA statute. And more importantly, Judge, those circuits that have the intent-to-return test, they've acknowledged you cannot jump into somebody's head, so they instead use a radius test. If you live within 100 miles of the defendant, then you have the, presumably, the intent to come back. In our case, Your Honor, my client testified that he lived five miles away from one of the defendants in Austin. My client testified he lived in Austin, so he meets that radius test that's combined with the intent-to-return. So in your view, the ADA would allow your client to bring a suit against all the people on that list, all the entities on the list that have been identified as being noncompliant with the ADA because he lives within 100 miles of those locations. By the intent-to-return test, Judge, and the issue... No, no, no, it's not intent-to-return. Most of those places, I assume, your client's never even seen. I may be wrong. I have no idea. It would be case by case. But is your argument that because all... I don't know if that's true, but let's say every entity on that list that has been introduced into this case of allegedly noncompliant companies, that your client has standing to sue any of them because they're within a certain distance of where he lives? Your Honor, under the text of the U.S. Code and the ADA, my client is a disabled American. He has the ability to access... Is the answer yes to my question? Yes with a caveat, Your Honor. What's the caveat? The caveat is some circuits have ruled that some visits are, it's a manufactured case. There is a case out of California which had to do with Bed Bath & Beyond where the person would go to, he would file 100 lawsuits in one day saying that the bathrooms were not compliant, that the paper towel holders were not the right size. Was he going to every bathroom? And do you believe your client has to go to the... Right. And that was the point from the circuit is that 100 bathroom visits in one day, that's ridiculous. That's not the correct application of the statute. For our cases, my client visited all these businesses over a three-year period, and he lives in Austin. All these cases were not filed the same day. My client did not visit the businesses the same day. This is over a three-year period. He would visit a couple of businesses, take a break, visit some more. Okay. I have a couple questions about your... Yes, Your Honor. Why in the world is there a Section 3 to your brief that says that attorney's fees are in error when there aren't attorney's fees? What's going on there? I believe in the last final section of the ruling from the district court, it says costs are to the defendant. I just wanted to make sure we were clear on that. Under the statute, the American rule, every party covers their own costs. But you're arguing that the magistrate erred by awarding attorney's fees and there isn't an award of attorney's fees, and it's a whole section of your brief. That was an error on my part, Your Honor. Okay. And on the $2,500, is that... Yes, Your Honor. You didn't appeal that to the district court, did you? I did, Your Honor. I did. I brought it up in the objections. It was an honest mistake. I have never missed a federal court appearance in eight years. Was it an honest mistake or you did raise it? There's two different things. Oh, no, no. I raised it. It was an honest mistake. I looked at PACER. Oh, you told the district court that you were appealing that? Yes, Your Honor. It's on the notice of appeal, and I told the court. Well, counsel, notice of appeal to us, you listed it. It was not one of your objections to the R&R. It wasn't part of the R&R, which makes sense. It shouldn't have been an objection to that. I don't see a separate appeal from the magistrate judge to the district court on the contempt. So it seems to me the district judge was never asked to rule on contempt, which he was required to do. And you were appealing something the district judge never had presented. Actually, I guess the – I mean, you're out of time. The actual question is, is there any separate argument that was made to the district judge that the magistrate judge should not have ordered contempt? Yes, Your Honor. That was made in the objections, and there was an objection. Objections to the R&R? That was made in the objections to the R&R and a separate objection to the magistrate's order of contempt. Is it all in the same document? No, Your Honor. I don't see it. There's two separate – It's a document that separately challenges the contempt filed in the district court. Yes, Your Honor. Well, we will look for it. Thank you. Thank you. Is that accurate? I don't believe it is. Is there a document challenging the district court – the award of contempt in the district court that's been adjudicated by the district court? I don't believe so, Your Honor. I believe it was in the objections that he filed, and then he re-urged the objections a second time. But I don't believe that there is a separate proceeding challenging that. And I don't think it's dispositive in any way of any of the issues that are before the court today. Well, the issue of contempt is not before us if it ever was presented to the district court. Correct. I agree. Well, let me ask you about mootness, because I think if this case is moot, this case is over. So tell me about the pictures. What's your reaction to that? My understanding of what he's saying is you can tell from the pictures what 96 inches is, because that's one side, and something else isn't that big. So what's your response to whether the pictures actually make it a fact issue? Yeah, I don't think they do, Judge, and I don't think he has standing anyway. But as to the mootness issue in particular – Does the mootness have to be resolved first? I think it probably does. Yes, sir. And I think it is – If we think so, you think so. Clearly is moot. And the pictures that Mr. Rosales, I believe, is referring to is that he's gone out there after the repairs were initially made, and he says, well, the sign wasn't quite right and the striping isn't quite right. I don't think he raised any issue at that point about the threshold, which the threshold is probably not particularly important because his client never got out of his vehicle on the one time that he did go to visit that location. But isn't your evidence the threshold was satisfactorily – Yes, Your Honor. And there wasn't evidence, but I can tell the court that after he made his complaints in pictures that an expert was brought out there to make sure everything was in complete compliance. So it's going to be moot one way or the other. But that's not in the record pictures. I'm still trying to figure out why the pictures don't make a fact question. What do the pictures show conclusively or at least create a fact question about? I don't think they show anything conclusively, Your Honor. We're talking about a location that had a total of four parking spaces. This is a small shoe repair location. Four spaces total. Is this just your client's parking lot? Pardon? This is just your client's parking lot? Correct. And it has to have four spaces? It only had four. It's a very small – Okay, not four. Handicap spaces, one. No. Four spaces and then after the van accessible – Once this issue was raised for the very first time by the filing of this lawsuit, then my client went back and said, okay, well, if we're not in compliance, we will resolve that issue. We will remedy that problem. So now there is a van accessible parking space and one other parking space. And so he has made a good faith effort to comply with the ADA, and so I do think the case is moot. There's no issue left to be resolved. There's an injunction that he requests now, an injunction to do things that have already been done. That's certainly under the law. That's not what the – that makes the case moot. There is no live controversy. Or is he requesting anything at all that's not done? No. About the sign, about the anything? No, it's all done. Was it done at the time, though, that the district court resolved the case? I believe it was, and I believe it was also – the case was also resolved on the issue of standing. I mean, I think that's pretty clear. I understand. Yes, I believe you're right on that. So if you want to talk about standing, but if it were true that it was not repaired, assume argument, though, that it was not repaired, then they wouldn't have a duty to go back out there until it was prepared. Yes, so I think, Judge, in that case we would just go through this procedure again, and a new motion to dismiss would be filed, and the case would be dismissed again, basically. At the magistrate's hearing, and the plaintiff did appear, the explanation was that the case had been settled. What did you say to the magistrate in response? At that point, it had been settled. Were you saying this is all moved now? No, sir. There were, I think, eight cases, seven or eight cases, that the hearing was consolidated on all those cases because standing was raised in all those cases. And Mr. Rosales, right before that hearing, settled, I believe, four of the cases. He didn't settle our case. And so his argument at that point was that the PACER report didn't specifically state that his client needed to attend, and that's why his client did not attend that hearing, despite the order from the magistrate judge stating that Mr. Deutsch had to appear and be prepared to offer testimony. What was your position at that stage of what your client was going to do and what your defense was? Yes, our client had already done those things before we filed the motion to dismiss. And was there any discussion about whether or not that remedied the Sparkin problem? Well, there wasn't on that day, Judge, because Mr. Deutsch didn't appear. Then there was a show-cause hearing and the contempt order was entered. Then we had another hearing where Mr. Deutsch did appear, at which time he specifically testified, and I think this is probably dispositive of this case because Mr. Rosales has just told you that there's a presumption about the intent to return and the 100-mile radius, but he didn't mention the fact that his client, under oath, testified that he had never been to our location before, he didn't try to go in the day that he did go, and he had no intent to go back ever. He testified to that. Is that in the record before us? It is. It is. So we never had in this case a difference between his difficulty, his injury, in not obtaining access to the show hospitals and satisfying the legal requirement. That distinction has never been made in the argument. Why? That is, whatever happened later, he was not contending he had suffered damages, which you're suing for, because when he got there, he couldn't get in. That's a good point, Judge, and I think it's important to note that, of course, the private attorney general, as Mr. Rosales refers to, Title III allows a suit for injunctive relief only, not for damages. He cannot sue for damages as a private individual under Title III. So you're not saying that if a person actually wanted to spend all their time, like some sort of impact litigation for each area, they wanted to actually spend all their time going to businesses and trying to get out of their car that are in their area where they live, that there's anything untoward about that? No, Judge, but I think to have standing to bring a lawsuit in federal court under ADA Title III, there has to be a real injury. It can't be a hypothetical injury. Well, did they have to actually go? Yes. And you're saying he didn't actually go, even though his complaint says he did? I'm saying he testified under oath that he had no intent to ever go back, and the cases do require that. But did he say he didn't go even one time? He went in his truck. His testimony was he drove up, but he could never get out. So he did go one time to the business in the parking lot. He did. He received, as I think is clear in the brief, Mr. Rosales prepared a list of various places that he thought were not compliant, provided that list to Mr. Deutsch, and then had him go out and make a visit so that he could file a lawsuit. But isn't that intent to return pretty easily satisfied? You just say that, yeah, when my shoes break, I may go back to that place. I may go back to a cheaper place, but I may go back there. Hypothetically, but in this case, he testified he did not have any intent to return, specifically, when I asked him about it. He sort of hemmed and hawed initially, but when I followed up on it, he admitted that he didn't have any intent to go back. Just like some of the other cases that were being heard that day, one of them was a women's hair salon that was by appointment only that he had gone to, and he didn't provide notice to any of these 385 locations ahead of time and say, I've run into this problem, could you please fix it? I mean, I think the real intent of the ADA is to avoid these architectural barriers to allow people to have access to these locations. But the Act doesn't have a notice requirement, does it? Not specifically, Judge. So regardless of whether it would be a good thing to do and maybe it would take away any suggestion of other motives, that's not a requirement under the ADA? No, but it's part of the elements of the cause of action. How do you mean? The elements of the cause of action require that there be no discriminatory policy or practice. There has to be a discriminatory policy or practice. There's none here. And failing to make requested reasonable modifications. Requested, so it has to be requested. Correct, correct. And the frame case, I mean, Mr. Rosales seems to think that that is the magic bullet that solves all the problems here, but it doesn't because it says, to be sure, it's an Article II case, that's the first thing to keep in mind, so it's a public rather than a private accommodation, but it says, to be sure, Article III standing requires a plaintiff seeking injunctive relief to allege actual or imminent and not merely conjectural or hypothetical injury. It must actually affect plaintiff's activities in some concrete way. And in that case, of course, the plaintiff's alleged in detail how inaccessible sidewalks regrettably affect their day-to-day activities. That's not the case here. Actually, it's 180 degrees to the contrary. What would be the easiest way to resolve this case from your perspective? Well, I think affirm the dismissal. But I mean, on what basis? What would be the basis that you would pick to do that? Well, I think probably standing is clearest because of the photograph as far as mootness, and I think it is moot as well, but I think standing is probably clearer of the two. Well, what is unclear about mootness? Are you saying there is at least some question about whether your client's in full compliance? I don't believe there is, but I mean, giving all the benefit of the doubt to the plaintiff. And what would be the doubt? Well, the photographs. If you can make something out of the photographs to show that, in fact, you're not in compliance. Wouldn't they have to give notice, though, again? Yeah, I believe so, Judge. Yes. Well, they gave notice. They've never given notice? I mean, if you give notice once and repairs are made but they're not in compliance, I wonder if you would need to give notice again. You need to be aware of whether you fixed the problem or not, and you don't need to rely on a plaintiff to say you haven't put yourself in compliance properly. Agreed. Agreed. Yes, Judge. Agreed. And that is why I advise the client, go ahead and get an expert, ADA expert, to come out there. Make sure everything is, in fact, in compliance, and if it isn't, then have them do whatever additional work needs to be done so that we can be finished with this matter. Are there still four parking places or only three after? Well, there's one, and there's one van accessible space now because that takes up basically the other three. I don't know how many you lost from the one compliant one. Okay. Anything else, counsel? No, Your Honor. Thank you. Your Honors, there's argument that Frame v. Arlington is still good case law by the Fifth Circuit. Once the disabled person encounters the barrier, that is sufficient to convey standing. And again, that last sentence of footnote 104 for Frame, where the Fifth Circuit quotes Picker, and it says, Regarding this case, Your Honor, my client went to the public accommodation offered by the defendant, the appellee. He encountered the barrier. He has standing under Frame. Well, if we have the intent to return, you concede that you lose, right? No, Your Honor, because first off, there is no intent to return in the statute. It has not been adopted by all the circuits. I said if we say you must show an intent to return, that you're actually going to be affected by this. We still win, Your Honor, because the intent to return, it's intertwined with the radius test. That's what the circuits have ruled. The intent to return test doesn't exist in and of itself because it's a judicial creation by the Ninth Circuit. And the Ninth Circuit says to look at the intent to return, you cannot jump to somebody said, if they live within that 100-mile radius, then presumably the person has the intent to return. But the presumption's been beaten here. It is. Because your client specifically said he's not. We may have a presumption, but there's no way that presumption hasn't been beaten here. Your Honor, that's how it ties back into frame because you cannot intend to return to a business that you can't enter to begin with. And that's why the Fifth Circuit had it right the first time. The Fifth Circuit says you don't have to have an intent to return once you encounter the barrier that is sufficient. You cannot, how can you intend to return to an HEB that has steps if you're in a wheelchair if there's no ramp? And that's why I think the Fifth Circuit decision to frame was a very good decision. But there's a van-accessible spot now. But it doesn't have the access aisle, Judge. It just is one space. It is not fully van-accessible because the access aisle does not measure 96 inches. Under the statute, we can still seek injunctive relief. As the defense counsel even said under Title III, he said, well, you can only get injunctive relief. Well, we're asking for injunctive relief to allow us standing to proceed with this lawsuit. It would be helpful, I think, Madam Presiding Judge, if we had counsel provide to us a cite to the record or the actual document you say raised the issue before the district court on contempt. Yes, Your Honor. I can follow that one the next 48 hours with a specific citation to the... Just 28J letter within two days, please. I'm sorry, 28... Yes, Your Honor. That's the same thing. It's just the format in which we do that. Yes, Your Honor. And if you want to cite something, you can have 48 hours after that if there's something that you think it's not a correct cite or something. But this is not an entreated argument. This is a record cite. Yes, Your Honor. Is that what you needed? You certainly cite to the record and attach the actual document that you say raised this. Yes, Your Honor. And again, it was an accident, Judge. I've never missed a court setting with a district court or a magistrate in eight years of practice. I apologize to the magistrate afterwards. It wasn't done on purpose. The way I've read the case law, the contempt fines usually start off at $500, and it's usually after the magistrate issues a warning. And so the contempt is supposed to be preventative, not punitive, and I did apologize to the court. It was just a simple mistake. For those reasons, Your Honor, I would just like to ask that the Fifth Circuit uphold Frame v. Arlington and allow us a chance to continue to enforce the ADA. As a disabled person and also as a person who represents disabled people, it's a very important law. It gives us the opportunity to enforce our rights and become part of American society and participate in American society again. That's it. Thank you, Your Honor. Thank you. We're going to take a brief recess before we consider the rest of the cases for the day.